## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| In Re: | Case No.: 24-30152 |
|---|---|
| The Fargo Brewing Company, LLC, | Chapter 11, Subchapter V |
| Debtor. | |

## MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING DEBTOR TO PAY AND HONOR CERTAIN PREPETITION WAGES, BENEFITS, AND OTHER COMPENSATION OBLIGATIONS; AND (B) AUTHORIZING THE BANKS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATING TO SUCH OBLIGATIONS

The Fargo Brewing Company, LLC ("**FBC**" or the "**Debtor**"), in the above-captioned Chapter 11, Subchapter V case hereby moves the Court ("**Motion**") for entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to Sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") for the following relief: (a) authorizing, but not directing, Debtor to: (i) pay its employees ("**Employees**") accrued prepetition wages and salaries (collectively, the "**Employee Claims**"); (ii) honor any prepetition obligations in respect of, and continue in the ordinary course of business until further notice (but not assume), certain of Debtor's paid time off (vacation & sick leave), worker's compensation, employee, and retiree benefit plans and programs (collectively, the "**Employee Benefits**"), as described below; (iii) reimburse Employees for prepetition expenses that Employees incurred on behalf of Debtor in the ordinary course of business (the "**Employee Expenses**"); (iv) pay all related prepetition payroll taxes and other deductions (the "**Employee Withholdings**"); and (v) to the extent that any of the foregoing programs is administered, insured, or paid through a third-party

administrator or provider, pay any prepetition claims of such administrator and provider in the ordinary course of business to ensure the uninterrupted delivery of payments or other benefits to the Employees (the "**Employee Administrator Obligations**" and collectively with the Employee Claims, the Employee Benefits, the Employee Expenses, and the Employee Withholdings, the "**Employee Obligations**"); (b) authorizing Debtor's bank and other financial institutions (collectively, the "**Banks**") to honor and process related checks and electronic transfers.  In support of this Motion, Debtor relies on the Declaration of Jared Hardy in Support of Chapter 11, Subchapter V Petition and First Day Motions ("**First Day Declaration**"), which is filed contemporaneously with this Motion and is incorporated herein by reference. In further Support of this Motion, Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this Subchapter V case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this Subchapter V case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.     The statutory bases for the relief sought herein are sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of the Bankruptcy Code and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

3.     On the date hereof (the "**Petition Date**"), Debtor commenced a voluntary case under Subchapter V of Chapter 11 of the Bankruptcy Code. Debtor is authorized to continue to operate its business and manage its property as debtors in possession pursuant to section 1183 of the Bankruptcy Code. To date, no trustee, examiner, or statutory committee has been

appointed in this Subchapter V case. Additional factual background relating to Debtor's business, capital structure, and the commencement of this Subchapter V case is set forth in detail in the First Day Declaration.

<b>R<span>ELIEF</span> R<span>EQUESTED</span></b>

4.      By this Motion, Debtor requests that the Court enter an order authorizing, but not directing, Debtor, in its sole discretion:  (A) to pay Employee Claims; (B) to honor any prepetition obligations in respect of, and continue in the ordinary course of business until further notice (but not assume), certain Employee Benefits, as described below; (C) to reimburse Employee Expenses; (D) to pay all related Employee Withholdings; and (E) to the extent that any Employee Benefit is administered, insured, or paid through a third-party administrator or provider, to pay any Employee Administrator Obligations.

5.      Debtor also requests this Court authorize the Banks, when requested by Debtor, in its discretion, to honor and process any checks or electronic transfers drawn on Debtor's bank account to pay any prepetition obligations described herein, whether such checks or other requests were submitted prior to or after the Petition Date, provided that sufficient funds are available to make such payments. Debtor further requests the Banks be authorized to rely on Debtor's designation of any particular check or electronic transfer request as approved pursuant to this Motion.

**I.      Employee Obligations**

    A.      <u>Employee Claims</u>

6.      Debtor's workforce is comprised of full-time salaried employees, full-time hourly employees (collectively, the "**Full-Time Employees**"), and regular part-time hourly employees (the "**Part-Time Employees**"). As of the Petition Date, Debtor employs

3

approximately 6 Full-Time Employees and 13 Part-Time Employees. All Employees are stationed at Debtor's location in Fargo, North Dakota.

7.  All Employees are paid bi-weekly for the prior two weeks ending on the Saturday of any payroll week. Payroll to the Employees is funded in net to CBI Business Services, Debtor's third-party payroll administrator on the Wednesday of any payroll week. CBI Business Services is responsible for distributing net pay to the Employees from its own accounts. In 2023, the average amount funded to CBI Business Services in each two-week period was approximately $17,000.00. Debtor's prepetition payroll date of April 5, 2024, covered the pay period from March 17, 2024, through March 30, 2024. The total amount of the April 5, 2024, payroll was approximately $15,400. Debtor's next scheduled payroll date is April 19, 2024, and it will cover the pay period from March 31, 2024, through April 13, 2024.

8.  Debtor pays CBI Business Services approximately $180 per pay period for its administrative services. As of the Petition Date, approximately $0.00 is owing to CBI Business Services.

9.  Debtor believes that, as of the Petition Date, approximately $15,500.00 was earned but remains unfunded with respect to Employees on account of accrued prepetition wages and salaries. The amount owed to any individual Employee on account of Employee Claims does not exceed the statutory salary cap established in 11 U.S.C. § 507(a)(4) of $15,150.

B.  <u>Employee Benefits</u>

1.  *Paid Time Off*

10. Full-Time Employees accrue Paid Time Off ("**PTO**") on a pro rata basis throughout the year. PTO is accrued at the rate of 3.6923 PTO hours per pay period, allowing

Full-Time Employees to earn up to 96 PTO hours per year. Up to 96 unused PTO hours may be carried over to the following year. PTO pay is calculated based on the Employee's base hourly pay. Unless otherwise required by state law, at separation of employment, Employees receive payment of all accrued PTO on the basis of full-time service.

11.     As of the Petition Date, the Employees had approximately $9,391.08 of accrued and unused PTO in the aggregate. Debtor seeks authorization to continue its PTO policy and to honor, in the ordinary course of business, all unused PTO time accrued prior to the Petition Date, but not to make cash payments on account of accrued but unused PTO time, except at separation of employment and where required by state law.

### 2.     *Employee Benefits Plans*

12.     Prior to the Petition Date, Debtor offered Full-Time Employees various standard employee benefits (the "**Benefit Programs**") including, without limitation, (i) medical and prescription drug coverage. Such benefits are administered pursuant to plans, programs, and policies that cover the Full-Time Employees. The amounts set forth below reflect the approximate prepetition costs of such Benefit Programs, which the Debtor seeks to continue in the ordinary course of its business.

### a.     Medical Insurance Program

13.     Debtor offers medical and prescription drug programs (the "**Health Plan**") to Full-Time Employees, which is administered by Sanford Health Plan. Debtor pays 50% of the cost for a single plan. Full-Time Employees that elect to enroll in the sponsored Health Plan contribute the additional premium owing through paycheck withholdings. The average monthly cost (after taking into account Employee contributions) of maintaining the Health Plan recently and at present has been approximately $316.84 per month. Debtor estimates that

as of the Petition Date, it owes approximately $0.00 in Health Plan Premiums. Debtor seeks authorization to pay prepetition amounts in respect of the Health Plan in an amount not to exceed $400.00 and to continue to pay postpetition costs of the Health Plan, during the pendency of this Subchapter V case.

b. Honoring Prepetition Benefits

14. As of the Petition Date, certain of the Benefit programs described above remained unpaid or not yet provided because certain obligations of Debtor under the applicable plan, program, or policy accrued either in whole or in part prior to the commencement of this Subchapter V case, but will not be required to be paid or provided in the ordinary course of Debtor's business until a later date. Debtor seeks authority to pay or provide, as they become due, all amounts in respect of the Benefit Programs described above that have already accrued, subject to the caps set forth herein.

c. Continuation of Benefit Programs Postpetition

15. Debtor also requests confirmation of its right to continue to perform its obligations with respect to these Benefit Programs for the duration of its Subchapter V case. These programs are an important component of the total compensation offered to the Employees and are essential to Debtor's efforts to maintain Employee morale and minimize attrition among those whose retention is important for Debtor's success. Debtor believes that the expenses associated with such programs are reasonable and necessary in light of the potential attrition, loss of morale, and loss of productivity that would occur if such programs were discontinued.

6

3.      *Workers Compensation Plan*

16.     Under the laws of various states, Debtor is required to maintain worker's compensation insurance to provide its Employees with coverage for injury claims arising from or related to their employment with Debtor. Debtor maintains a worker's compensation benefits program through North Dakota Workforce Safety Insurance (the "**WC Program**") and other state programs in North Dakota. The WC Program provides benefits to all Employees for claims arising from or related to their employment with Debtor. As of the Petition Date, Debtor believes it owes approximately $268.56 related to the WC Program.

17.     For the claims administration process in this Subchapter V case to operate as efficiently as possible, and to ensure that Debtor complies with state law, it is necessary that Debtor obtains authority to continue to maintain the WC Program in the ordinary course of business, and to pay prepetition amounts related thereto, including, without limitation, any payments for worker's compensation claims, Employee Administrator Obligations to North Dakota, and other amounts required in connection with the program as such amounts become due in the ordinary course during the pendency of this Subchapter V case.

18.     Debtor seeks authorization to continue to pay prepetition costs in an amount not to exceed $300.00 and to continue to pay postpetition costs of the WC Program during the pendency of this Subchapter V case.

4.      *Retirement Savings Program*

19.     Debtor maintains for its employees Simple IRA accounts Fidelity Investments, Incorporated (the "**Retirement Plan**"), administered by Heartland Trust Company, through which qualified and participating Employees may defer a portion of their salary to help meet their financial goals and accumulate savings for their future. The Retirement Plan is funded by

Employee and employer contributions. Debtor matches up to three percent (3%) of Full-Time Employee's gross wage withholding to the Employee's Retirement Plan. The average monthly cost (after taking into account Employee contributions) of maintaining the Retirement Plan recently and at present has been approximately $635.63 per month. As of the Petition Date, there is $531.97 accrued but unfunded contributions with respect to the Retirement Plan.

20.     Debtor also pays Heartland Trust Company approximately $1,500.00 per year to administer the Retirement Plan. As of the Petition Date, $3,100.00 is owing for these services.

21.     Debtor seeks authorization to continue to pay prepetition costs in an amount not to exceed $4,000.00 and to continue to pay postpetition costs of the Retirement Plan during the pendency of this Subchapter V case.

C.     <u>Employee Expenses</u>

22.     Prior to the Petition Date, Debtor directly or indirectly reimbursed its Employees for certain expenses incurred in the scope of their employment on behalf of Debtor. The Employee Expenses are incurred in the ordinary course of Debtor's business operations and include, without limitation, expenses for meals, travel, automobile mileage, and other business-related expenses.

23.     Absent authority to pay the Employee Expenses incurred prepetition, the Employees could be obligated to pay such amounts out of their personal funds. Debtor, therefore, seeks authority to pay all outstanding Employee Expenses in an amount not to exceed $2,000.00, and to continue the foregoing policy with respect to all remaining Employees during the pendency of this v case.

D.    Employee Withholdings

24.    Debtor routinely deducts certain amounts from Employees' compensation that represent earnings that judicial or government authorities or the Employees have designated for deduction, including, for example, various federal, state, and local income, Federal Insurance Contribution Act ("**FICA**") and other taxes, support payments and tax levies, savings programs contributions, benefit plans insurance programs, and other similar programs, and forward those amounts to various third-party recipients.

25.    In addition, Debtor is responsible for remitting, for its own account, various taxes and fees associated with payroll pursuant to the FICA and federal and state laws regarding unemployment and disability taxes ("**Payroll Taxes**"). Debtor believes, as of the Petition Date, it is current on Payroll Taxes. Debtor seeks authority to deduct Employee Withholdings in the ordinary course of business and remit Employee Withholdings to the appropriate third parties, including, without limitation, amounts determined to be related to the period prior to the Petition Date.

**II.    Direction to Banks**

26.    Finally, Debtor seeks an order authorizing the Banks to receive, process, honor, and pay all of Debtor's prepetition checks and fund transfers on account of any Employee Obligations, and prohibiting the Banks from placing any holds on, or attempting to reverse, any automatic transfers to any account of an Employee or other party for Employee Obligations. Debtor also seeks an order authorizing it to issue new postpetition checks or effect new postpetition fund transfers on account of the Employee Obligations to replace any prepetition checks or fund transfers that may be dishonored or rejected.

### III.  Summary

27.     Debtor seeks authority to continue to honor and implement the Employee-related policies and practices as described above and to pay Employee Prepetition Obligations subject to the limits set forth below:

| Category[1] | Amount |
|---|---|
| Employee Claims[2]<br>(3/31/24 – 4/15/24) | $17,000 |
| Paid Time Off (only at separation and where required by state law) | $10,000 |
| Health Plan | $    400 |
| WC Program | $    300 |
| Retirement Plan | $  4,000 |
| Employee Expenses | $  2,000 |

### BASIS FOR RELIEF REQUESTED

**I.   The Court should authorize, but not direct, Debtor, in its discretion, to pay or otherwise honor the employee obligations.**

28.     Debtor seeks the relief requested herein because any delay in paying or otherwise honoring any of the Employee Obligations could severely disrupt Debtor's relationship with, and irreparably impair the morale of, the Employees at a time when their continued dedication, confidence, cooperation, and services are most critical to Debtor.  Debtor faces the risk that its ability to effectively operate its business in an efficient manner may be severely jeopardized if Debtor is not immediately granted authority to pay the Employee

---

[1]   Each category includes amounts for related Employee Administrator Obligations

[2]   No Employee will be paid more than $12,850 in the aggregate with respect to Employee Claims.

Obligations. Granting the relief requested in this Motion on the grounds set forth below will allow Debtor to continue to operate with minimal disruption and enable it to maximize the value of its estate for the benefit of all stakeholders.

29.     Pursuant to section 507(a)(4) of the Bankruptcy Code, each Employee may be granted a priority claim for:

> allowed unsecured claims, but only to the extent of $12,850 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for –
>
> > (A)     wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual.

11 U.S.C. § 507(a)(4).

30.     Likewise, under section 507(a)(5) of the Bankruptcy Code, Employees may ultimately be granted a priority claim for:

> allowed unsecured claims for contributions to an employee benefit plan –
>
> > (A)     arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
> >
> > (B)     for each such plan, to the extent of –
> >
> > > (i)     the number of employees covered by each such plan multiplied by $12,850; less
> > >
> > > (ii)     the aggregate amount paid to such employees under paragraph (4) of his subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

31.     Debtor believes that all the relief requested herein is within the statutory caps of section 507(a)(4) and 507(a)(5) of the Bankruptcy Code. Debtor, therefore, would be required

to pay these claims in full to confirm any Subchapter V plan. *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages and salaries and certain allowed unsecured claims for contributions to an employee benefit plan). Thus, granting the relief requested herein would only affect the timing, and not the amount, of the payment of such amounts to the extent that they constitute priority claims.

32.     Even if a particular claim is not entitled to priority, payment is nonetheless justified under section 363(b)(1) of the Bankruptcy Code, which empowers the Court to allow Debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1). Debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based upon its sound business judgment. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999).  Courts emphasize that the business judgment rule is not an onerous standard and may be satisfied "as long as the proposed action *appears* to enhance the debtor's estate." *Crystalin, LLC v. Selma Props., Inc.*, 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003) (quoting *Four B. Corp. v. Food Barn Stores, Inc.*, 107 F.3d 558, 566 n.16 (8th Cir. 1997)). Under the business judgment rule, "management of a corporation's affairs is placed in the hands of its board of directors and officers, and the Court should interfere with their decisions only if it is made clear that those decisions are clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code." *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003).

33.     In addition to section 363(b)(1), payment is further justified under section 105(a) of the Bankruptcy Code and the well-established "doctrine of necessity." The Court's

power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The United States Supreme Court first articulated the doctrine of necessity over a century ago in *Miltenberger v. Logansport Railway Company*, 106 U.S. 286 (1882), in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors, and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership. *See id.* at 309-14. The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in *Miltenberger. See In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation . . . in serious, jeopardy.").

34.     The doctrine of necessity permits the Court to authorize payment of certain prepetition claims prior to the completion of the reorganization process where the payment of such claims is necessary to the reorganization. *See In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment); *see also In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

35.    The Employees perform a variety of critical functions for Debtor, and their knowledge, skills, and service are essential to the success of the continued operations of Debtor. Without the continued service and dedication of the Employees, it will be difficult, if not impossible, to efficiently and effectively continue to operate the business and maximize the value of Debtor's income-earning capacity and ability to fund a plan to repay its creditors. Moreover, absent the requested relief, the Employees would suffer great hardship and, in many instances, financial difficulties, because these monies and benefits are needed to enable them to meet their personal obligations. This would have a highly negative impact on workforce morale and likely would result in unmanageable performance issues or turnover, thereby resulting in immediate and irreparable harm to Debtor and its estate. Debtor, therefore, believes it is necessary to pay and/or honor the prepetition Employee Obligations to maintain employee morale and a focused workforce during this critical time, which will allow Debtor to avoid any inopportune interruptions to their efforts to maximize the value of its estate for the benefit of all stakeholders.

## II.    The Court should authorize the Banks to honor and process Debtor's payments on account of the employee obligations.

36.    Debtor represents that it has sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations, and anticipated access to cash collateral. As a result of the commencement of this Subchapter V case and in the absence of an order of the Court providing otherwise, Debtor's checks and electronic fund transfers in respect of the Employee Obligations may be dishonored or rejected by financial institutions. Under Debtor's cash management system, Debtor can readily identify checks or transfers as relating directly to payment of Employee Obligations.

14

Accordingly, Debtor believes that prepetition checks and transfers other than those for Employee Obligations will not be honored inadvertently. Debtor submits that any Bank should be authorized to rely on the representations of Debtor with respect to whether any check drawn or transfer request issued by Debtor prior to the Petition Date should be honored pursuant to this Motion.

37.     For the reasons set forth above, Debtor submits that the relief requested herein is in the best interests of Debtor, its estate, and its creditors and, therefore, should be granted.

## IMMEDIATE RELIEF IS JUSTIFIED.

38.     Bankruptcy Rule 6003 provides the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Debtor submits for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to Debtor.

## WAIVER OF ANY APPLICABLE STAY

39.     Debtor also requests the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise. Fed. R. Bankr. P. 6004(h). As described above, the relief sought herein is necessary for Debtor to operate its business without interruption and to preserve the value of its estate. Accordingly, Debtor respectfully requests the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

<u>**RESERVATION OF RIGHTS**</u>

40.     Nothing in this Motion or any actions taken by Debtor pursuant to relief granted in any order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or (ii) shall impair, prejudice, waive, or otherwise affect the rights of Debtor or its estate with respect to the validity, priority, or amount of any claim against Debtor and its estate.

<u>**NOTICE**</u>

41.     Notice of this Motion has been given to: (i) the Office of the United States Trustee for the District of North Dakota; (ii) First Western Bank and the United States Small Business Administration; (iii) holders of the twenty (20) largest unsecured claims; and (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor submits, considering the nature of the relief requested, no other or further notice need be given.

<u>**CONCLUSION**</u>

42.     WHEREFORE, Debtor respectfully requests the Court enter an order, substantially in the form attached hereto as <u>**Exhibit A**</u>, granted the relief requested herein and such other and further relief as is just and proper.

Dated this 15th day of April, 2024.

**VOGEL LAW FIRM**

BY:_/s/ Drew J. Hushka_

Caren W. Stanley (#06100)
cstanley@vogellaw.com
Drew J. Hushka (#08230)
dhushka@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
Telephone:  701.237.6983
*PROPOSED ATTORNEYS FOR DEBTOR*

5386726.3

# EXHIBIT A

## (Proposed Order)

## UNITED STATES BANKRUTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Case No.:  24-30152 |
| The Fargo Brewing Company, LLC, | Chapter 11, Subchapter V |
| Debtor. | |

### ORDER (A) AUTHORIZING DEBTOR TO PAY AND HONOR CERTAIN PREPETITION WAGES, BENEFITS, AND OTHER COMPENSATION OBLIGATIONS; AND (B) AUTHORIZING THE BANKS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATING TO SUCH OBLIGATIONS

Upon consideration of the motion (the "**Motion**")[1] of Debtor for the entry of an order, pursuant to sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of the Bankruptcy Code, (a) authorizing Debtor, in accordance with its stated policies and in its discretion, to pay, honor, or otherwise satisfy certain of the Employee Obligations, including amounts and obligations related to the period prior to the Petition Date, and (b) authorizing Banks to honor and process related checks and electronic transfers; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required; and it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion or the First Day Declaration, as applicable.

and provided for herein is in the best interest of Debtor, its estate, and its creditors; and after due deliberation and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED:**

1.      The Motion is GRANTED, as set forth herein.

2.      Upon entry of this Order, Debtor is authorized to pay and/or honor (including to any third parties that provide or aid in the monitoring, processing, or administration of the Employee Obligations), in its sole discretion, the Employee Obligations listed in the Motion and this Order; provided, however, notwithstanding any other provision of this Order, no payments to any Employee shall exceed the $15,150 statutory cap provided for under section 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

3.      Debtor is authorized, but not directed, in its sole discretion, in amounts not to exceed the limits set forth in the Motion and this Order to honor and continue the Employee Benefits that were in effect as of the Petition Date; provided, however, that such relief shall not constitute or be deemed an assumption or an authorization to assume any of such Employee Benefits under section 365(a) of the Bankruptcy Code.

4.      Prepetition amounts authorized to be paid by this Order are limited as follows:

| Category[2] | Amount |
|---|---|
| Employee Claims[3]<br>(3/31/24 – 4/15/24) | $17,000 |
| Paid Time Off (only at separation and where required by state law) | $10,000 |
| Health Plan | $    400 |

---

[2]   Each category includes amounts for related Employee Administrator Obligations

[3]   No Employee will be paid more than $15,150 in the aggregate with respect to Employee Claims.

| WC Program | $    300 |
|------------|----------|
| Retirement Plan | $  4,000 |
| Employee Expenses | $  2,000 |

5.      The Banks are authorized to receive, process, honor, and pay all prepetition and postpetition checks and fund transfers on account of the Employee Obligations that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments. The Banks are prohibited from placing any holds on, or attempting to reverse, any automatic transfers to any account of an Employee or other party for Employee Obligations. Debtor is authorized to issue new postpetition checks or effect new postpetition fund transfers on account of the Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

6.      Notwithstanding any other provision of this Order, any Bank may rely on the representations of Debtor with respect to whether any check, draft, wire, or other transfer drawn or issued by Debtor prior to the Petition Date should be honored pursuant to any order of this Court, and any Bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (i) at the direction of Debtor, (ii) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite the above-described protective measures, shall not be liable to Debtor or its estate on account of such prepetition check or other item being honored postpetition.

7.      Debtor may pay and remit any and all withholding, including social security, FICA, federal and state income taxes, garnishments, health care payments, retirement fund

3

withholding, and other types of withholding, whether these relate to the period prior to or after the Petition Date.

8.      Any party receiving payment from Debtor is authorized to rely upon the representation of Debtor as to which payments are authorized by this Order.

9.      Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by Debtor pursuant to the relief) shall:  (i) be construed as a request for authority to assume any executor contract under section 365 of the Bankruptcy Code; (ii) waive, affect, or impair any of Debtor's rights, claims, or defenses, including, but not limited to, those arising from section 365 of the Bankruptcy Code, other applicable law, and any agreement; (iii) grant third-party beneficiary status or bestow any additional rights on any third party; or (iv) be otherwise enforceable by any third party.

10.      Nothing in this Order shall be construed as binding on this Court or any other party-in-interest, or to establish the law of the case, with respect to whether an individual is or is not an insider within the meaning of section 101(31) of the Bankruptcy Code.

11.      Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

12.      Nothing in this Order shall be deemed to: (i) authorize the payment of any amounts subject to section 503(c) of the Bankruptcy Code, (ii) authorize or approve any bonus plan or severance plan that is subject to section 503(c) of the Bankruptcy Code, or (iii) authorize Debtor to cash out unpaid paid time off upon termination of an employee unless applicable state law requires such payment.

13.      Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to Debtor.

14.     Notwithstanding any provision in the Bankruptcy Rules to the contrary:  (i) this Order shall be effective immediately and enforceable upon its entry; (ii) Debtor is not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (iii) Debtor is authorized and empowered, and may in its discretion and without further delay, take any action necessary or appropriate to implement this Order.

15.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated this _____ day of April, 2024.

_____
UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Case No.: 24-30152 |
| | Chapter 11, Subchapter V |
| The Fargo Brewing Company, LLC, | |
| Debtor. | |

## CERTIFICATE OF SERVICE

STATE OF NORTH DAKOTA    )
                                              )   SS
COUNTY OF CASS              )

     Jill M. Nona, being first duly sworn, does depose and say:  she is a resident of Fargo, North Dakota, of legal age and not a party to or interested in the above-entitled matter.

     On April 15, 2024, affiant caused the following document(s):

**Motion for Entry of an Order (A) Authorizing Debtor to Pay and Honor Certain Prepetition Wages, Benefits, and Other Compensation Obligations; and (B) Authorizing the Banks to Honor and Process Checks and Transfers Relating to Such Obligations**

to be served by United States postal mail on:

| | | |
|---|---|---|
| **Debtor** | The Fargo Brewing Company, LLC ATTN:  Jared Hardy | 610 N University Dr #104 Fargo, ND  58102 |
| **Attorneys for Debtor** | Caren W. Stanley | cstanley@vogellaw.com |
| | Drew Hushka | dhushka@vogellaw.com |
| **U.S. Trustee** | Office of the U.S. Trustee Region 12 | 300 South Fourth St., Suite 1015 Minneapolis, MN  55415 |
| **U.S. Small Business Administration** | U. S. Small Business Administration | 10737 Gateway West, #300 El Paso, TX  79935 |
| **Attorneys for U.S. Small** | John Baker, District Counsel | SBA Denver Colorado District Office |

| | | |
|---|---|---|
| **Business Administration** | | 721 19th Street, #426<br>Denver, CO. 80202 |
| | Kent Rockstad | U.S. Attorney's Office<br>655 First Avenue No., Suite 250<br>Fargo, ND 58102-4932 |
| **First Western Bank & Trust** | First Western Bank & Trust | 825 26th Ave East<br>West Fargo, ND 58078 |
| **Attorneys for First Western Bank & Trust** | Richard P. Olson | Olson and Burns, P.C.<br>PO Box 1180<br>Minot, ND 58702-1180 |
| **Remainder of 20 Largest Unsecured Creditors** | Class B Development, LLC | 3155 Bluestem Dr, Unit #204<br>West Fargo, ND 58078 |
| | Jade Presents | 302 N University Dr<br>Fargo, ND 58102 |
| | North Dakota Office of State Tax Commissioners | 600 E Boulevard Ave, Dept 127<br>Bismarck, ND 58505-0552 |
| | Berlin Packaging | PO Box 74007164<br>Chicago, IL 60674-7164 |
| | Elan Financial Services | P.O. Box 6335<br>Fargo, ND 58125-6335 |
| | First Western Bank & Trust | 825 26th Ave. East.<br>West Fargo, ND 58078 |
| | Great Western Malting Co | PO Box 51602<br>Los Angeles, CA 90051-5902 |
| | Northern Plains Label | 16 16th St S.<br>PO Box 9495<br>Fargo, ND 58106-9495 |
| | Country Malt-Mid Country | PO Box 51602<br>Los Angeles, CA 90051-5902 |
| | Indie Hops | 1705 NW Harborside Dr<br>Vancouver, WA 98660 |
| | American Express | PO Box 981535<br>El Paso, TX 79998-1535 |
| | Eide Bailey | 4321 20th Ave. So.<br>Fargo, ND 58103 |
| | Brave Creative Studio | 3732 Burritt St S<br>Fargo, ND 58104 |
| | Heartland Trust Company | 1202 27th St S<br>PO Box 9135<br>Fargo, ND 58106-9135 |

|  | West Rock | 4637 16th Ave N<br>Fargo, ND  58102 |
|  | EMC Insurance Companies | PO Box 712<br>Des Moines, IA  50306-0712 |

/s/ Jill Nona
Jill Nona

Subscribed and sworn to before me this 15th day of April, 2024.

/s/ Sonie Thompson

(SEAL)                            Notary Public, Cass County, North Dakota

5394418.1

3