# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| In Re: | Case No.:  24-30152 |
|---|---|
| The Fargo Brewing Company, LLC, | Chapter 11, Subchapter V |
| Debtor. | |

## MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE MAINTENANCE OF BANK ACCOUNTS; (B) AUTHORIZING THE CONTINUED USE OF CASH MANAGEMENT SYSTEM; AND (C) WAIVING THE REQUIREMENTS OF 11 U.S.C. § 345(B) ON AN INTERIM BASIS

The Fargo Brewing Company, LLC ("**FBC**" or the "**Debtor**"), in the above-captioned Chapter 11, Subchapter V case hereby moves the Court ("**Motion**") for entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to Sections 105, 345, 363, 364(b), and 503(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* ("**Bankruptcy Code**"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"): (a) authorizing Debtor to continue using the prepetition bank account and existing business forms and checks; (b) authorizing Debtor's continued use of its existing cash management system; and (c) waiving the requirements of 11 U.S.C. § 345(b) on an interim basis.  In support of this Motion, Debtor relies on the Declaration of Jared Hardy in Support of Chapter 11, Subchapter V Petition and First Day Motions ("**First Day Declaration**"), which is filed contemporaneously with this Motion and is incorporated herein by reference. In further Support of this Motion, Debtor respectfully represents as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      This Court has jurisdiction over this Subchapter V case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this Subchapter V case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are Sections 105(a), 345, 363, 364(b), and 503(b) of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004.

<u>**BACKGROUND**</u>

**I.      General**

3.      On the date hereof ("**Petition Date**"), Debtor commenced a voluntary case under Subchapter V of Chapter 11 of the Bankruptcy Code. Debtor is authorized to continue to operate its business and manage its property as debtor in possession pursuant to Section 1183 of the Bankruptcy Code. To date, no trustee, examiner, or statutory committee has been appointed in this Subchapter V case. Additional factual background relating to Debtor's business, capital structure, and the commencement of this Subchapter V case is set forth in further detail in the First Day Declaration.

**II.      Cash Management System**

4.      As of the Petition Date, Debtor, in the ordinary course of its business operations, employs one (1) bank account ("**Bank Account**") to manage the funds it holds to operate its business. The Bank Account is part of a centralized cash management system ("**Cash Management System**") that ensures Debtor's ability to efficiently monitor and control its cash position and disburse funds to satisfy its obligations. Through the Bank Account, Debtor efficiently collects, transfers, and disburses funds generated from its operations on a daily

2

basis.  Debtor believes the Bank Account is generally in a financially stable banking institution with the Federal Deposit Insurance Corporation or other appropriate government-guaranteed deposit protection insurance.

5.      **Exhibit B**, attached hereto, sets forth the name and address of the Bank at which the Bank Account is maintained, the account number (last four digits only), and a brief description of the type of the account. Debtor manages its cash receipts and disbursements through the Bank Account. In doing so, Debtor routinely deposits and withdraws by various methods including check, wire transfer, automated clearing house transfer, and electronic funds transfer.

6.      On a daily basis, Debtor processes transactions through the Cash Management System. Debtor maintains current and accurate records of all transactions processed through the Cash Management System. Debtor's Cash Management System is similar to those commonly employed by corporate enterprises of comparable size and complexity. Among other benefits, the Cash Management System permits Debtor to accurately monitor cash availability at all times. The Cash Management System also permits Debtor to centrally manage and track the collection and transfer of funds, which reduces administrative burden and expense and maximizes interest income.

7.      Pursuant to the Cash Management System, Debtor is party to a merchant card processing agreement ("**Processing Agreement**") with TSYS Merchant Solutions, LLC, a/k/a ARRYVED (the "**Processing Company**") that enables Debtor to accept credit cards as payment for its goods. This Processing Agreement is essential to Debtor's business, as it allows Debtor's customers to purchase merchandise on credit. This operation generally is taken for

3

granted by modern consumers, and its loss would significantly impair Debtor's ability to serve, attract, and retain those customers.

8.      The Processing Company deducts its fees from settlement following the end of Debtor's accounting period. Debtor estimates as of the Petition Date, approximately $500.00 in fees to the Processing Company are outstanding. Because credit card sales are significant to Debtor's total sales, it is critical to the Cash Management System that there be no disruptions in these payments. Debtor seeks authority from the Court to pay all prepetition unpaid fees due to the Processing Company and to continue such payments to the Processing Company in the ordinary course of Debtor's business.

9.      Under the Processing Agreement, upon the return to Debtor of merchandise purchased using a credit card, Debtor is obligated to refund to the Processing Company the purchase price of the returned merchandise plus certain adjustments (collectively, the "**Chargebacks**") against daily settlement amounts. It is possible that certain Chargebacks incurred by Debtor immediately prior to the Petition Date may not have been fully netted out prior to the Petition Date. Moreover, although Debtor believes any Chargebacks arising after the Petition Date would be postpetition obligations of Debtor, it may be argued that Chargebacks arising after the Petition Date nevertheless should be considered prepetition obligations where the returned merchandise was purchased from Debtor prior to the Petition Date. In such circumstances, to the extent that the netting of the parties' obligations would not constitute recoupment, the setoff of Chargebacks arguably may be foreclosed by the automatic stay imposed by Section 362(a) of the Bankruptcy Code. By this Motion, Debtor seeks authority to pay all Chargebacks obligations, and to continue to pay Chargebacks in the ordinary course of business.

4

### III.    Existing Business Forms and Checks

10.    In the ordinary course of business, Debtor uses checks with Debtor's name printed thereon. In addition, Debtor maintains preprinted correspondence and business forms, including, but not limited to, letterhead, envelopes, promotional materials, internal administrative forms, and other business forms (collectively, along with Debtor's decks, "**Business Forms**"). To minimize administrative expense and delay, Debtor requests authority to continue to use its Business Forms substantially in the forms existing immediately prior to the Petition Date, without reference to Debtor's "Debtor-in-Possession" status.

## RELIEF REQUESTED

11.    Debtor hereby requests entry of an order, pursuant to Sections 105, 345, 363, 364(b), and 503(b) of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004: (a) authorizing Debtor's maintenance of its Bank Account and continued use of existing Business Forms; (b) authorizing, but not directing, Debtor to continue use of its existing Cash Management System; and (c) waiving the requirements of 11 U.S.C. § 345(b) on an interim basis.

## BASIS FOR RELIEF REQUESTED

### I.    Maintaining the existing Cash Management System is important to Debtor's operations and Subchapter V efforts.

12.    The maintenance of the Cash Management System is important for the preservation and maximization of the value of Debtor's assets. Debtor believes the Bank Accounts and related Cash Management System mechanisms are well-suited to Debtor's business needs and operations. To require Debtor to close the Bank Account and reestablish new account(s) would not result in greater administrative controls and would require

considerable time and expense to Debtor's estate. Moreover, permitting Debtor to continue using its existing Bank Account is essential to an orderly transition of Debtor into Subchapter V and to avoid disruption of its business and operations, including the disruption that could result if checks written but not negotiated or cashed prior to the Petition Date were dishonored.

13.     Debtor's request for authorization to continue to use the Cash Management System is consistent with Section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business, without notice or a hearing."  11 U.S.C. § 363(c)(1). Section 363(c)(1) is intended to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business. *See, e.g.*, *In re Metropolitan Cosmetic & Reconstructive Surgical Clinic, P.A.*, 115 B.R. 185, 188 (Bankr. D. Minn. 1990); *see also In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992); *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007). Included within the purview of Section 363(c) is a debtor's ability to continue the routine transactions necessitated by its cash management system. *See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In reAmdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). Nevertheless, Debtor brings this Motion out of an abundance of caution, to the extent any aspect of the Cash Management System could be considered as outside the ordinary course of business for purposes of Section 363(c).

14.     Courts have noted an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *rev'd on other grounds*, 997 F.2d 1039 (3d Cir. 1993); *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir.

6

1995) (finding cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets"). The United States Court of Appeals for the Third Circuit has agreed, emphasizing requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *In re Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1061 (3d Cir. 1993). For these reasons, Debtor should be permitted to continue use of the Cash Management System.

15.     Further, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provision of this title" and Bankruptcy Code section 363(c)(1) authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing. 11 U.S.C. §§ 105(a) & 363(c)(1). The purpose of these sections is to provide a debtor-in-possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court. *See Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379,384 (2d Cir. 1997).

16.     Debtor's Cash Management System constitutes a customary and essential business practice that was created and implemented by the management of Debtor in the exercise of its business judgment. Moreover, the Cash Management System is similar to those commonly employed by corporate enterprises comparable to Debtor in size and complexity.

17.     Indeed, the Cash Management System is a practical mechanism that allows Debtor to transfer its funds for the payment of its obligations that decreases the burdens on Debtor, and that provides several important benefits, including the ability to: (a) control and monitor corporate funds; (b) ensure cash availability; and (C) reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate balance and

presentment information. All of the benefits discussed with respect to maintaining Debtor's existing Cash Management System will assist Debtor in its efforts to maintain its operations pending the disposition of its assets and confirmation of a Subchapter V plan, making the relief requested herein appropriate under section 105(a) of the Bankruptcy Code.

**II.    The Court should authorize Debtor to maintain the existing Bank Account and continue to use its existing check stock.**

18.    The Office of the United States Trustee has established operating guidelines for debtors in possession relating to cash management systems ("**UST Guidelines**"). The UST Guidelines, which are designed to provide a clear demarcation between a debtor's prepetition and postpetition operations, require, among other things, a debtor (a) close all existing bank accounts, (b) open new accounts designated as "debtor in possession" accounts, (c) make all post-petition disbursements by check, and (d) include the words "debtor in possession" and certain other information on all checks."  *See* 28 U.S.C. § 586; UST Guidelines.

19.    Courts have routinely waived the requirements of the UST Guidelines, recognizing they are often impractical and potentially detrimental to a debtor's postpetition business operations and restructuring efforts. *See, e.g.*, *Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding the cash management system allows the debtor "to administer more efficiently and effectively its financial operations and assets"); *Official Comm. Of Unsecured Creditors of the Columbia Gas Transmission Corp. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys., Inc.)*, 997 F.2d 1039, 1061 (3d Cir. 1993) (finding a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient").

20.     Bankruptcy judges in Minnesota have routinely waived the strict enforcement of bank account closing requirements imposed pursuant to the guidelines adopted by the U.S. Trustee. *See, e.g., In re Magnetation LLC,* No. 15-50307, Doc. No. 58 (Bankr. D. Minn. May 7, 2015); *In re Archdiocese of Saint Paul and Minneapolis*, No. 15-30125, Doc. No. 17 (Bankr. D. Minn. Jan 16, 2015); *In re Wagstaff Minnesota, Inc.*, No. 11-43073, Doc. No. 37 (Bankr. D. Minn. May 5, 2011); *In re Genmar Holdings, Inc.*, No. 09-43537, Doc. No. 24 (Bankr. D. Minn. June 4, 2009); *In re Intrepid U.S.A., Inc.*, No. 04-40416, Doc. No. 65 (Bankr. D. Minn. Mar. 24, 2004).

21.     And this Court has also previously waived the strict enforcement of bank account closing requirements imposed pursuant to the guidelines adopted by the U.S. Trustee. *See, e.g., In re Vanity Shop of Grand Forks, Inc.*, No. 17-30112, Doc. No. 74 (Bankr. D.N.D. Mar. 3, 2017).

22.     Any disruption of Debtor's accounting and cash management procedures would be enormously burdensome and disruptive, and could adversely impact Debtor's efforts to reorganize. At this critical juncture, Debtor must be able to conduct "business as usual" to the extent possible. To this end, it is essential Debtor be permitted to continue to use its existing Cash Management System and Bank Account.

23.     The Cash Management System and Bank Account provide numerous benefits to Debtor and its estate. Among other benefits, the Cash Management System and Bank Account permit Debtor to centrally control and monitor the collection and transfer of funds, ensure cash availability, reconcile intercompany transactions, and reduce administrative burden and expense. Debtor has the capability through the Cash Management System to distinguish between prepetition and postpetition transactions and to reconcile intercompany

transactions without the necessity of closing the Bank Account and opening a new one. Moreover, Debtor can generate through the Cash Management System detailed and accurate reports.

24.      Based on the foregoing, there is good cause to allow Debtor to operate the Bank Account as such was maintained in the ordinary course of business before the Petition Date. Continued use of the Cash Management System and the Bank Account is in the best interest of Debtor's estate and no party in interest would be prejudiced in any way by the continued use.

25.      In addition, Debtor has concurrently filed several motions seeking authorization to pay prepetition obligations in the ordinary course of business. If Debtor was required to open new accounts, it would likely be unable to timely implement the critical relief sought in those motions. Debtor can monitor disbursements from the Bank Account to ensure that only those prepetition obligations expressly approved by the Court are paid.

26.      In the ordinary course of its business, Debtor uses certain pre-printed check stock. To avoid disruption of the Cash Management System and unnecessary expense, Debtor requests it be authorized to continue to use its existing check stock, without reference to its status as debtor in possession. Debtor submits parties in interest will not be prejudiced if Debtor is authorized to continue to use its existing checks. The creditors will be receiving a notice of commencement of this Subchapter V case in normal course. Most parties doing business with Debtor undoubtedly will be aware of its status as debtor in possession; thus, changing checks immediately is unnecessary and unduly burdensome.

27.      The Court has authority to grant the relief requested in this Motion under Section 105(a) of the Bankruptcy Code, which empowers bankruptcy courts to enter "any order,

process, or judgment that is necessary or appropriate" to carry out the provisions of the

Bankruptcy Code. 11 U.S.C. § 105(a). Section 105(a) of the Bankruptcy Code codifies the

"equitable power" of bankruptcy courts and provides "broad authority" to accomplish tasks

important to the implementation of the Bankruptcy Code. *See United States v. Energy Res.*

*Co.,* 495 U.S. 545, 549 (1990) ("stating the statutory directive of Section 105(a) is "consistent

with the traditional understanding that bankruptcy courts, as courts in equity, have broad

authority to modify creditor-debtor relationships").

### III.    The Court should authorize Debtor to continue using debit, wire, and ACH payments.

28.     Debtor requests the Court grant further relief from the UST Guidelines to the

extent they require Debtor to make all disbursements by check. In particular, the UST

Guidelines require all receipts, and all disbursements, of estate funds must be made by check

with a notation representing the reason for the disbursement. As discussed above, in the

ordinary course of business, Debtor conducts transactions occasionally through ACH

payments and other similar methods. If Debtor's ability to conduct transactions by debit, wire,

ACH payment, or other similar methods is impaired, Debtor may be unable to perform under

certain contracts, its business operations may be unnecessarily disrupted, and its estate will

incur additional costs. Accordingly, Debtor submits it should be permitted to continue using

debit, wire, and ACH payments.

### IV.    The Court should authorize the Bank to continue to maintain, service, and administer the Bank Account in the ordinary course of business.

29.     Debtor respectfully requests the Court authorize the bank/financial institution

(the "**Bank**") at which the Bank Account is maintained to continue to maintain, service, and

administer the Bank Account as an account of debtor in possession, without interruption and

in the ordinary course of business. In this regard, the Bank should be authorized and directed to receive, process, honor, and pay any and all checks, ACH payments, and other instructions, and drafts payable through, drawn, or directed on the Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto.

30.     Debtor further requests the Court authorize the Bank to accept and honor all representations from Debtor as to which checks, drafts, wires, or ACH payments should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH payments are dated before or after the Petition Date. Debtor also requests, to the extent the Bank honors a prepetition check or other item drawn on any account: (i) at the direction of Debtor; (ii) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) as a result of an innocent mistake made despite the above-described protective measures, such Bank shall not be deemed to be liable to Debtor or its estate on account of such prepetition check or other item honored postpetition. Debtor respectfully submits such relief is reasonable and appropriate because the Bank is not able to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise. Debtor further requests the Bank be authorized to (i) honor Debtor's directions with respect to the opening and closing of any Bank Account, and (ii) accept and hold, or invest, Debtor's funds in accordance with Debtor's instructions: provided in each case that the Bank shall not have any liability to any party for relying on such representations.

31.     Moreover, Debtor requests the Court authorize (i) the Bank to charge, and Debtor to pay or honor, both prepetition and postpetition service and other fees, costs, charges, and expenses to which the Bank is entitled under the terms and in accordance with their contractual arrangements with Debtor, and (ii) charge-back returned items to the Bank

Account, whether such items are dated before, on or subsequent to the Petition Date, in the ordinary course. Based on historical averages, Debtor estimates approximately $0.00 in prepetition Bank service and other fees have accrued but are not yet due and owing relating to the Bank Account.

**V.    Cause exists for waiving the deposit and investment guidelines under Section 345 of the Bankruptcy Code.**

32.    Section 345(a) of the Bankruptcy Code authorizes deposit or investment of the money of the estate, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). Although Section 345(a) generally requires, with respect to deposits and investments that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," the estate must require a bond in favor of the United States secured by the undertaking of a U.S. Trustee approved corporate surety, the court is permitted to dispense with this undertaking "for cause." 11 U.S.C. § 345(b).

33.    The Court's ability to excuse strict performance of the requirements of Section 345(b) of the Bankruptcy Code "for cause" arises from the 1994 amendments to the Bankruptcy Code. The legislative history of those amendments provides, in pertinent part, as follows:

> Section 345 of the Code governs investments of funds of bankruptcy estates. The purpose[] is to make sure that funds of a bankrupt that are obliged to creditors are invested prudently and safely with the eventual goal of being able to satisfy all claims against the bankruptcy estate. Under current law, all investments are required to be FDIC insured, collateralized or bonded. While this requirement is wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, it can work to needlessly handcuff larger, more sophisticated debtors. This section would amend the Code to allow

> the courts to approve investments other than those permitted by section 345(b)
> for just cause, thereby overruling *In re Columbia Gas Systems, Inc.*, 33 F.3d 294
> (3d Cir. 1994).

*In re Serv. Merch. Co.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (quoting H.R. Rep. No.

103-835, at 46-47), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3355).

34.     In determining whether the "cause" standard under Section 345(b) of the

Bankruptcy Code has been met, courts consider a "totality of the circumstances analysis,"

utilizing the following factors: (i) the sophistication of the debtors' business; (ii) the size of

the debtors' business operations; (iii) the amount of the funds involved; (iv) the bank ratings

(Moody's and Standard and Poor) of the financial institutions where the debtor in possession

funds are held; (v) the complexity of the case; (vi) the safeguards in place within the debtor's

own business of insuring the safety of the funds; (vii) the debtor's ability to reorganize in the

face of a failure of one or more of the financial institutions; (viii) the benefit to the debtor; (ix)

the harm, if any, to the estate; and (x) the reasonableness of the debtor's request for relief from

the Section 345(b) requirements in light of the overall circumstances of the case. *Serv. Merch.*,

240 B.R. at 896.

35.     Debtor believes it is in compliance with the requirements of Section 345(a).

Nevertheless, out of an abundance of caution, Debtor requests: (i) a waiver of the deposit and

investment requirements of Section 345(b) of the Bankruptcy Code to the extent such

requirements are inconsistent with Debtor's current practices; (ii) that applicable institutions

be authorized and directed to accept and hold or invest such funds at Debtor's direction; and

(iii) that applicable institutions be authorized and directed to honor Debtor's directions with

respect to the opening and closing of any Bank Account.

36.    Even if Debtor's current deposit and investment practices do not strictly comply with the approved guidelines identified in Section 345 of the Bankruptcy Code, the practices nevertheless are prudent and designed to yield the maximum reasonable net return on the funds invested, taking into account the safety of such deposits.

37.    In light of the foregoing, Debtor submits cause exists for waiver of the requirements of Section 345(b) of the Bankruptcy Code to the extent that those requirements are inconsistent with Debtor's current deposit and investment practices. Debtor requests interim waiver of the Section 345 requirements for a period of thirty (30) days from the Petition Date.

### IMMEDIATE RELIEF IS JUSTIFIED.

38.    Bankruptcy Rule 6003 provides the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Debtor submits for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to Debtor.

### WAIVER OF ANY APPLICABLE STAY

39.    Debtor also requests the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise. Fed. R. Bankr. P. 6004(h). As described above, the relief sought herein is necessary for Debtor to operate its business without interruption and to preserve value of its estate. Accordingly, Debtor respectfully requests the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

15

## NOTICE

40.     Notice of this Motion has been given to: (i) the Office of the United States Trustee for the District of North Dakota; (ii) First Western Bank and the United States Small Business Administration; (iii) holders of the twenty (20) largest unsecured claims; and (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002. Debtor submits, considering the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

41.     WHEREFORE, Debtor respectfully requests the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granted the relief requested herein and such other and further relief as is just and proper.

Dated this 15th day of April, 2024.

**VOGEL LAW FIRM**


BY:*/s/ Drew J. Hushka*_____
      Caren W. Stanley (#06100)
      cstanley@vogellaw.com
      Drew J. Hushka (#08230)
      dhushka@vogellaw.com
      218 NP Avenue
      PO Box 1389
      Fargo, ND  58107-1389
      Telephone:  701.237.6983
      *PROPOSED ATTORNEYS FOR DEBTOR*

5385962.1

**<u>EXHIBIT A</u>**

**(Proposed Order)**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Case No.: 24-30152 |
| The Fargo Brewing Company, LLC, | Chapter 11, Subchapter V |
| Debtor. | |

**ORDER (A) AUTHORIZING THE MAINTENANCE OF BANK ACCOUNTS; (B) AUTHORIZING THE CONTINUED USE OF CASH MANAGEMENT SYSTEM; AND (C) WAIVING THE REQUIREMENTS OF 11 U.S.C. § 345(B) ON AN INTERIM BASIS**

Upon the Motion[1] of Debtor for entry of an order, pursuant to Sections 105, 345, 363, 364(b), and 503(b) of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004: (i) authorizing Debtor's continued use of the Cash Management System; (ii) authorizing Debtor to continue using the prepetition Bank Account and account control agreements and using debit, wire, and ACH payments; and (iii) waiving the requirements of 11 U.S.C. § 345(b) on an interim basis; and upon consideration of the First Day Declaration and the record of this Subchapter V case; and it appearing this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 1334 and 157; and it appearing this is a core matter pursuant to 28 U.S.C. § 157(b)(2) and this Court may enter a final order consistent with Article III of the United States Constitution; and it appearing venue of this Subchapter V case and of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing due and adequate notice of the Motion has been given under the circumstances, and that no other or further notice need be given; and it appearing the relief requested in the Motion is in the best interests of Debtor, its

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

estate, its creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefore;

**IT IS HEREBY ORDERED:**

1.  The Motion is GRANTED, as set forth herein.

2.  Debtor is authorized, but not directed, to, in it sole discretion: (i) continue operating the Cash Management System and honor any prepetition obligations related thereto; (ii) maintain the existing Bank Account and business forms; (iii) maintain the ability to use debit, wire and ACH payments; and (iv) continue to deposit and invest funds in accordance with their current practices to the extent set forth herein.

3.  Debtors is further authorized, in its sole discretion, to: (i) continue to use, with the same account numbers, the Bank Account in existence as of the Petition Date as identified in **<u>Exhibit B</u>** to the Motion; (ii) use, in its present form, all checks and other documents related to the Bank Account existing immediately before the Petition Date, without reference to Debtor's status as debtor in possession; (iii) treat the Bank Account for all purposes as an account of Debtor as debtor-in-possession; (d) deposit funds in and withdraw funds from the Bank Account by all usual means, including checks, wire transfers, ACH payments, and other debits; and (e) pay any ordinary course both prepetition or postpetition bank fees incurred in connection with the Bank Account, and to otherwise perform its obligations under the documents governing the Bank Account.

4.  The Bank at which the Bank Account is maintained is authorized to continue to maintain, service, and administer the Bank Accounts as accounts of debtor in possession, without interruption and in the ordinary course of business. In this regard, the Bank is authorized to receive, process, honor and pay any and all checks, ACH payments and other

instructions, and drafts payable through, drawn or directed on the Bank Account by holders, makers or other parties entitled to issue instructions with respect thereto on account of any claim arising (i) on or after the Petition Date or (ii) prior to the Petition Date and otherwise authorized by this Court.

5.      The Processing Agreement shall be maintained and shall continue to govern the postpetition cash management relationship between Debtor and the Processing Company, provided, however, that nothing contained herein shall constitute an assumption of the Processing Agreement pursuant to Section 365 of the Bankruptcy Code.

6.      In the course of providing cash management services to Debtor, the Bank, without further order of this Court, is authorized to (i) charge, and Debtor is authorized to pay or honor, both prepetition and postpetition service and other fees, costs, charges and expenses to which the Bank is entitled under the terms and in accordance with its prepetition contractual arrangements with Debtor, and (ii) charge-back returned items to the Bank Account, whether such items are dated before, on or subsequent to the Petition Date, in the ordinary course.

7.      Notwithstanding any other provisions of this Order, any Bank may rely on the representations of Debtor with respect to whether any check, draft, wire, or other transfer drawn or issued by Debtor prior to the Petition Date should be honored pursuant this or to any order of this Court, and any Bank that honors a prepetition check or other item drawn on any account that is the subject of this Order:  (i) at the direction of Debtor, (ii) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite the above-described protective measures, shall neither be deemed to be in violation of this Order nor be liable to Debtor or its estate on their account of

such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Order.

8.      The Bank is further authorized to (i) honor Debtor's directions with respect to the opening and closing of the Bank Account, and (ii) accept and hold, or invest, Debtor's funds in accordance with Debtor's instructions; provided, in each case, that the Bank shall not have any liability to any party for relying on such representations.

9.      If the Bank at which Debtor holds the Bank Account is party to a Uniform Depository agreement with the U.S. Trustee, within fifteen (15) days of the date of entry of this Order, Debtor shall (i) contact the Bank, (ii) provide the Bank with the Debtor's employer identification number, and (iii) identify the Bank Account as being held by a debtor in possession in a bankruptcy case.

10.     If the Bank at which Debtor holds the Bank Account is not party to a Uniform Depository agreement with the U.S. Trustee, Debtor shall have thirty (30) days to comply with Section 345 of the Bankruptcy Code unless further extended by order of this Court, and Debtor shall use their good-faith efforts to cause the banks to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee within thirty (30) days of the date of this Order.

11.     Debtor is authorized to use its existing check stock.

12.     The Bank is authorized to debit Debtor's account in the ordinary course of business without need for further order of this Court for: (i) all checks, items, and other payment orders drawn on Debtor's account which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Bank's receipt of notice of filing of the petition; and (ii) all checks, automated clearing house entries, and other items deposited or credited to one of Debtor's accounts with such Bank prior to filing of the petition

4

which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent Debtor was responsible for such items prior to filing of the Petition.

13.     Nothing contained herein shall prevent Debtor from closing the Bank Account or opening any additional bank accounts, as it may deem necessary and appropriate, and any relevant bank is authorized to honor Debtor's requests to close or open such Bank Account or additional bank accounts, as the case may be; provided that notice of the opening or closure of any account shall be given to the U.S. Trustee and the Subchapter V Trustee as soon as practicable; and provided, further, that any new bank accounts shall be opened at a bank that is party to a Uniform Depository agreement with the U.S. Trustee, or at a bank that is willing to immediately execute a Uniform Depository agreement.

14.     Debtor shall maintain accurate and detailed records of all transfers and intercompany transactions, if any, within the Cash Management System so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions.

15.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against Debtor or a waiver of Debtor's rights to dispute any claim or lien.

16.     Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to Debtor.  The requirements of Bankruptcy Rule 6004(a) are waived under the circumstances.

17.    Notwithstanding any provision in the Bankruptcy Rules to the contrary: (i) this Order shall be effective immediately and enforceable upon its entry; (ii) Debtor is not subject to any stay in the implementation, enforcement, or realization of the relief granted in this order; and (iii) Debtor is authorized and empowered, and may in its discretion and without further delay, take any action necessary or appropriate to implement this Order.

18.    Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

19.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated this _____ day of April, 2024.

_____
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT B**

## **(Bank Account)**

| Bank Name | Bank Address | Bank City | Bank State | Bank Zip | Acct. No. | Acct. Type |
|---|---|---|---|---|---|---|
| Bell Bank | 3100 13th Ave. So. | Fargo | ND | 58103 | XXX3803 | Checking |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| In Re: | Case No.: 24-30152 |
|---|---|
| | Chapter 11, Subchapter V |
| The Fargo Brewing Company, LLC, | |
| Debtor. | |

**CERTIFICATE OF SERVICE**

STATE OF NORTH DAKOTA )
                            )   SS
COUNTY OF CASS           )

       Jill M. Nona, being first duly sworn, does depose and say: she is a resident of Fargo, North Dakota, of legal age and not a party to or interested in the above-entitled matter.

       On April 15, 2024, affiant caused the following document(s):

**Motion for Entry of an Order (a) Authorizing the Maintenance of Bank Accounts; (b) Authorizing the Continued Use of Cash Management System; and (c) Waiving the Requirements of 11 U.S.C. § 345(b) on an Interim Basis**

to be served by United States postal mail on:

| **Debtor** | The Fargo Brewing Company, LLC ATTN: Jared Hardy | 610 N University Dr #104 Fargo, ND 58102 |
|---|---|---|
| **Attorneys for Debtor** | Caren W. Stanley | cstanley@vogellaw.com |
| | Drew Hushka | dhushka@vogellaw.com |
| **U.S. Trustee** | Office of the U.S. Trustee Region 12 | 300 South Fourth St., Suite 1015 Minneapolis, MN 55415 |
| **U.S. Small Business Administration** | U. S. Small Business Administration | 10737 Gateway West, #300 El Paso, TX 79935 |
| **Attorneys for U.S. Small** | John Baker, District Counsel | SBA Denver Colorado District Office 721 19th Street, #426 |

| | | |
|---|---|---|
| **Business Administration** | | Denver, CO.  80202 |
| | Kent Rockstad | U.S. Attorney's Office<br>655 First Avenue No., Suite 250<br>Fargo, ND 58102-4932 |
| **First Western Bank & Trust** | First Western Bank & Trust | 825 26th Ave East<br>West Fargo, ND  58078 |
| **Attorneys for First Western Bank & Trust** | Richard P. Olson | Olson and Burns, P.C.<br>PO Box 1180<br>Minot, ND  58702-1180 |
| **Remainder of 20 Largest Unsecured Creditors** | Class B Development, LLC | 3155 Bluestem Dr, Unit #204<br>West Fargo, ND  58078 |
| | Jade Presents | 302 N University Dr<br>Fargo, ND  58102 |
| | North Dakota Office of State Tax Commissioners | 600 E Boulevard Ave, Dept 127<br>Bismarck, ND  58505-0552 |
| | Berlin Packaging | PO Box 74007164<br>Chicago, IL  60674-7164 |
| | Elan Financial Services | P.O. Box 6335<br>Fargo, ND  58125-6335 |
| | First Western Bank & Trust | 825 26th Ave. East.<br>West Fargo, ND  58078 |
| | Great Western Malting Co | PO Box 51602<br>Los Angeles, CA  90051-5902 |
| | Northern Plains Label | 16 16th St S.<br>PO Box 9495<br>Fargo, ND  58106-9495 |
| | Country Malt-Mid Country | PO Box 51602<br>Los Angeles, CA  90051-5902 |
| | Indie Hops | 1705 NW Harborside Dr<br>Vancouver, WA  98660 |
| | American Express | PO Box 981535<br>El Paso, TX  79998-1535 |
| | Eide Bailey | 4321 20th Ave. So.<br>Fargo, ND  58103 |
| | Brave Creative Studio | 3732 Burritt St S<br>Fargo, ND  58104 |
| | Heartland Trust Company | 1202 27th St S<br>PO Box 9135<br>Fargo, ND  58106-9135 |

| | West Rock | 4637 16th Ave N<br>Fargo, ND 58102 |
| | EMC Insurance Companies | PO Box 712<br>Des Moines, IA 50306-0712 |

_/s/ Jill Nona_
Jill Nona

Subscribed and sworn to before me this 15th day of April, 2024.


_/s/ Sonie Thompson_

(SEAL)                                  Notary Public, Cass County, North Dakota

5395669.1

3